ACALUS L. PALMER, Respondent, *v.* ERWIN A. HUSSEY, Appellant.

The conclusive character of a judgment as a bar extends only to identical issues; and they must be such not merely in name, but in fact and substance. If the issue in the later litigation is intrinsically and substantially an entirely different one, even though capable of being described in similar language or by a common form of expression, then the truth is not excluded by the judgment.

The " fiduciary capacity " in the provision of the Bankrupt Act, which excludes from the protection of a discharge debts contracted in that capacity, relates to cases of technical trust, not to such as is implied by the contract between principal and agent, and the " fraud " intended by the same provision is an active or express fraud, as distinguished from an implied or constructive one.

Plaintiff's complaint alleged in substance, and the referee found, that he transferred to defendant " as his agent and broker in a fiduciary capacity " certain bonds subject to his order on ten days' notice, the coupons to be collected for his account free of charge, and two per cent on the par value to be allowed plaintiff for interest; that defendant, without plaintiff's permission, " fraudulently and willfully sold, disposed of and misapplied the said bonds," and refused to deliver them on demand. Plaintiff obtained judgment for the value of the bonds, and defendant, having subsequently been discharged in bankruptcy, asked for an order perpetually restraining the enforcement of the judgment. *Held*, that assuming the judgment was conclusive, not merely on the fact of conversion, but upon the incidental facts of the fiduciary capacity, and the fraudulent conduct of defendant, yet that the issue as to the " fiduciary capacity " and the " fraud " presented upon the motion, was not necessarily identical with that set forth in the complaint and found in plaintiff's favor; as the " fiduciary capacity " so alleged might have been the implied trust resulting from an agency, and the " fraud " only that implied from the agent's breach of duty ; and that, therefore, the judgment was not conclusive.

It appeared that the only " fiduciary capacity " in which defendant was acting when the debt evidenced by the judgment was contracted, was that originating in and implied from the agency ; that defendant hypothecated the bonds for loans at a time when he was or supposed himself to be perfectly solvent, and able, upon ten days' notice, to redeem and restore them. In consequence of losses he was unable so to redeem. *Held*, that defendant was not acting in a fiduciary capacity, and there was no fraud within the meaning of the Bankrupt Act ; that the debt was within the operation and effect of the discharge; and that a denial of the application was error.

Defendant's petition in bankruptcy was filed and he was adjudged a bankrupt in January, 1868 ; the discharge was granted in May, 1880. The reason assigned by defendant for the delay was that he was unable sooner to raise the money necessary to pay the fees of officers and the expenses of counsel in the proceedings. *Held*, that as the explanation satisfied the Bankrupt Court, and the discharge was finally granted, the explanation was sufficient here.

(Argued November 22, 1881 ; decided January 17, 1882.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made May 6, 1881, which affirmed an order of Special Term, denying an application on the part of defendant for a perpetual stay of all pro- ceedings upon the judgment herein, because of defendant's discharge in bankruptcy.

The facts are sufficiently set forth in the opinion.

*Richard H. Huntley* for appellant. The allegations in the complaint as to the fiduciary character of the defendant were not traversable, and hence, of course, they could not be *res adjudicata*. (*Wood* v. *Henry*, 40 N. Y. 124; *Connaughty* v. *Nichols*, 42 id. 86; *Block* v. *Comrs.*, 9 Otto, 693; *Greentree* v. *Rosenstock*, 31 N. Y. 588; *Auld* v. *Smith*, 23 Kans. 65.) An estoppel does not arise from every thing that is found or adjudicated by a court. It is only predicated upon that which is essential and material to the cause of action, and without which the action could not be sustained. (*Packet Co.* v. *Sickels*, 5 Wall. 592; *Russell* v. *Place*, 94 U. S. 606, 608; *Sweet* v. *Tuttle*, 14 N. Y. 465; 2 Phillips' Evidence, Cowen & Hill's and Edwards' notes [ed. of 1868], pp. 2, 14, 15, 16, and notes; *Supples* v. *Carmon*, 44 Conn. 424; *Matter of Roberts*, 59 How. 141; *In re Benson*, N. Y. Com. Pleas, Gen. Term, February, 1881; 11 N. Y. Weekly Dig. 394; *Remington Paper Co.* v. *O'Dougherty*, 81 N. Y. 474.)

*O. P. Buel* for respondent. It is *res adjudicata*, evidenced by the judgment record in this action, that the debt upon which the judgment was obtained was created by defendant " while acting in a fiduciary capacity," and by " fraud." (U. S. R. S.,

p. 933, § 5117; *Smith* v. *Smith*, 79 N. Y. 534; 2 Smith's Lead. Cas. [7th Am. ed.], note to *Dutchess of Kingston's Case* at pp. 767, 771, 785–6, 790; *Smith* v. *Town of Ontario*, U. S. Circuit Court, N. Y., Nov., 1880, 11 Reporter, 116; *Cromwell* v. *County of Sac*, 94 U. S. 357; 2 Phil. Ev. [4th Am. ed.], pp. 18–19 in C. & H., note 261; *Blair* v. *Bartlett*, 75 N. Y. 150; *Gates* v. *Preston*, 41 id. 113; *Jarvis* v. *Driggs*, 69 id. 143; *Brown* v. *Mayor*, 66 id. 384; Bump's Bankruptcy [8th ed.], 684.) It is not necessary, in order that a former judgment be conclusive upon a point in controversy, that the point in question was the sole point in controversy or the sole ground of the judgment. ( 2 Smith's L. C. 113; *Smith* v. *Smith*, 79 N. Y. 634.) It is *res adjudicata* that the debt or claim was not such as would be discharged in bankruptcy. (*Palmer* v. *Hussey*, 59 N. Y. 647; U. S. R. S., § 5107.) The conduct of defendant from the outset of this suit, not only shows gross *laches* in making this application, but also implies an admission that the questions of " fiduciary capacity " and " fraud " were the gist of this litigation. (U. S. R. S., § 5106; *Monroe* v. *Upton*, 50 N. Y. 593.)

FINCH, J. The appellant, having been discharged in bankruptcy, asked for an order perpetually enjoining the plaintiff from enforcing a judgment obtained by him against the defendant. The motion was successfully resisted upon the ground that the debt represented by the judgment was of a character which the Bankrupt Act did not reach, because contracted in a fiduciary capacity and fraudulently. The proof of the latter fact was rested by the General Term, upon the conclusive effect of the judgment itself, which was held to establish, beyond denial, the character of the debt as above described. This application of the doctrine of *res judicata* is here assailed, upon the ground that the judgment is conclusive only as to issues material and necessary to the cause of action, and not as to questions incidental and subsidiary, even though actually litigated and decided. The action was substantially for the conversion of certain bonds. The complaint alleged that the plaintiff

transferred the bonds to the defendant "as his agent and broker, in a fiduciary capacity," upon an agreement evidenced by a written memorandum, which certified that such bonds were held "subject to the order of A. L. Palmer at ten days' notice," the coupons to be collected for his account free of charge, and two per cent per annum on the par value of the bonds to be allowed him for interest. The complaint further alleged that the defendant, without plaintiff's permission, "fraudulently and willfully" sold, disposed of, and misapplied the said bonds," and refused to deliver them up on demand. The action was tried before a referee, who found the facts charged by the complaint, and specifically, that the bonds were received in a fiduciary capacity, and were fraudulently and willfully sold, disposed of and misapplied. On this state of facts, the appellant argues that the action in substance and effect was solely for a conversion; that the fiduciary character of the defendant, and the fraudulent nature of his transfer were not essential elements of the cause of action; that they were immaterial and superfluous and not traversable; that the cause of action was complete without them; and the ultimate judgment is conclusive only upon the fact of a conversion, and does not estop the defendant from now denying his fiduciary character, and the fraudulent nature of his transfer of the bonds.

If, upon the facts of the case, the question mainly argued by the learned counsel for the appellant was essential to a correct conclusion, it might not be found free from difficulty. But its discussion will prove unnecessary to the view which we take of the case, for, granting all that is claimed by the respondent in this direction, and assuming, for the sake of the argument, that the judgment is conclusive, not merely upon the fact of conversion, but also upon the attendant and incidental facts of the fiduciary capacity and fraudulent conduct of the defendant, we are still of opinion that the debt evidenced by the judgment was within the effect and operation of the bankrupt's discharge, and not excluded therefrom. The conclusive character of a judgment extends only to identical issues, and they must be such, not merely in name, but in fact and substance. If the

vital issue of the later litigation has been in truth already de-
termined by an earlier judgment, it may not again be contested,
but if it has not, if it is intrinsically and substantially an en-
tirely different issue, even though capable of being described
in similar language, or by a common form of expression, then the
truth is not excluded, and the judgment no answer to the dif-
ferent issue. Applying this very plain proposition to the case
at bar, we are to ascertain whether the "fiduciary capacity"
and the "fraud" which, under the provisions of the Bank-
rupt Act, exclude from its protection debts tainted with those
elements, are necessarily one and the same with the "fiduciary
capacity," and the fraudulent sale and misappropriation of
bonds found by the referee, and evidenced by the judgment
which is sought to be made conclusive. If they are identical,
if they necessarily present one and the same issue, the judg-
ment closes the door to further contest. But if not identi-
cal, or even if under similar description and name, they may
be essentially different, the judgment is either not conclusive
at all, or only becomes so when an examination of the facts
upon which it is founded demonstrates the actual and real
identity of the issues involved. We must, therefore, compare
the respective issues, those involved in the determination of
this motion, and those which we have assumed were decided
by the judgment, to ascertain whether they are, in substance,
identical or different.

It is settled, in this court, in supposed accordance with the
doctrine of the Federal courts, that the "fiduciary capacity"
intended by the Bankrupt Act relates to cases of technical trust;
not merely such as the law implies from the contract, but actual
and expressly constituted; and in like manner, that the "fraud"
intended is an active or express fraud as distinguished from an
implied or constructive one, founded merely upon some breach
of duty. (*Hennequin* v. *Clews*, 77 N. Y. 427.) Taking this
construction of the Bankrupt Act as a guide, the question raised
on this motion, the precise issue to be decided is, whether Hus-
sey held Palmer's bonds as his actual and technical trustee, or
became liable for their amount through an active and express

fraud, involving moral turpitude or intentional wrong. It is very plain that this issue was not necessarily identical with that pleaded in Palmer's complaint, and found in his favor by the referee. The fiduciary capacity there alleged and found might have been merely the implied trust resulting from an agency, and the fraud alleged and found only that implied from the agent's breach of duty. If no more than this was involved in the judgment it failed entirely to determine the issue which this motion presents, and, therefore, cannot dictate our decision. So that we are brought inevitably to an examination of the facts upon which the judgment for conversion rested, and to the inquiry whether the fiduciary capacity and the fraud which it established were or were not substantially the same with those referred to in the Bankrupt Act. The averments of the complaint, the findings of the referee, the facts stated in the affidavits, and those developed upon the motion demonstrate very conclusively that the only fiduciary capacity in which Hussey was acting when the debt in question was contracted, originated in the fact of his agency and was implied from that relation. The complaint alleges that he received the bonds " as agent and broker and in a fiduciary capacity," and upon an express written agreement to return them on ten days' notice. The referee finds that they were received in a fiduciary capacity upon the terms of such agreement. The affidavits and the evidence show no other or different trust or fiduciary relation than such as may be said always to exist in a case of agency. In every such case there is an element of trust and confidence so that a breach of duty may be said to be a breach of trust, but the agent is nevertheless not a fiduciary within the meaning of the Bankrupt Act. This was so held under the act of 1841, in the case of a factor who received the money of his principal and did not pay it over. (*Chapman* v. *Forsyth*, 2 How. [U. S.] 202.) Here the broker received the bonds of his principal and did not return them. In both cases there was a breach of duty, in some sense a violation of trust and confidence, but in neither, if we follow the authorities, did the debtor contract his liability in a fiduciary capacity within the meaning of the Bankrupt Act. Then remains to be

considered the question of fraud. The complaint alleges that the defendant "fraudulently and willfully sold, disposed of and misapplied the bonds." The referee finds the fact in that identical language. The proofs show the written agreement under which the bonds were received. That was, "these bonds we hold subject to the order of A. L. Palmer at ten days' notice, agreeing to collect the coupons for his account, free of charge, and to allow him two per cent per annum interest on the par value of said bonds, said interest to commence and count June 1, 1866." What the defendant did was to hypothecate these bonds for loans, at a time when he was or supposed himself to be perfectly solvent, and able upon any ten days' notice to redeem and restore them. Losses came and he was unable to redeem. He was liable for a conversion. We have already held, on an earlier appeal, that whatever right he may have had to use these bonds, he had none inconsistent with his duty to return them. (59 N. Y. 647.) But to some use of them he was certainly entitled. It is absurd to suppose that he was to pay two per cent a year for the mere privilege of keeping securely the plaintiff's bonds. We are puzzled, as Palmer seems to have been, to understand what possible use of these bonds was contemplated and paid for, except as security for loans. We can discern no fraud in that use. The bailee may have been unwise in hypothecating them, and trusted too confidently in his ability to redeem, but we can very plainly see that he exercised only what he deemed was his right, and which he was at least excusable for so regarding. So far, therefore, as the referee finds that the disposition of the bonds was willful and intentional, the finding is true but immaterial for any purpose. So far as he finds it to have been fraudulent, we must admit the truth of the finding, and give it precisely the meaning and force to which it is entitled. What is that meaning? It is quite certain that the fraud is that only which may be implied from the violation of the duty resting upon the defendant, and his contract. It cannot be any thing else, for nothing else was proven. There was no active, express fraud, but simply one implied from an unjustifiable act. What

he did was to hypothecate the bonds.    That, by itself, was wrong only in the peril incurred.    Done when, and as it was, it cannot be deemed an affirmative fraudulent act.    There is no possible fraud in the transaction, except that implied from the conversion.    To some extent, as was said in *Hennequin* v. *Clews* (*supra*) in most, if not all, cases of conversion, some element of fraud or breach of duty exists in a greater or less degree, and if all such cases were intended to be excepted from the operation of a discharge in bankruptcy, the provisions which discharge debts for the conversion of personal property would have no force.    It seems to us, therefore, quite clear that the judgment invoked decided no fact which is at issue here; that the fiduciary capacity, and the fraud which it found and established was another and a very different thing from that which it is invoked to establish; that while the forms of expression and of phrase are the same, the substantial facts are diverse and far apart ; and the judgment did not adjudge such active and affirmative fraud, such technical and express breach of trust as bars the effect of the discharge; nor did it in terms profess to do so.    The respondent argues further, that the debtor has been guilty of *laches* in not sooner availing himself of his defense under the Bankrupt Act. (*Monroe* v. *Upton*, 50 N. Y. 593.)    His petition was filed January 20, 1868, and he was adjudged a bankrupt on the twenty-fourth of the same month.    That was almost thirteen years ago.    In the interval the plaintiff sued and recovered, caused the defendant's arrest, pursued him with supplemental proceedings, and had a receiver appointed, without once being met by the discharge as a bar. This delay would be fatal but for a single fact.    The discharge was never granted until the 17th day of May, 1880.    The reason assigned is, that during this long interval the bankrupt was unable to raise the money necessary to pay the fees of officers, and bear the expenses of counsel in the proceedings. The explanation of this long delay satisfied the Bankrupt Court, and the discharge was finally granted.    Under the circumstances we think the delay is sufficiently explained.    The orders of the

General Term and of the Special Term must be reversed, and the motion granted, with costs.

All concur.

Ordered accordingly.